UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TANYA JOINER ON BEHALF OF D.J.                    CIVIL ACTION

VERSUS                                            NO. 10-3375

MICHAEL J. ASTRUE, COMMISSIONER                   SECTION "N" (2)
OF SOCIAL SECURITY ADMINISTRATION

**FINDINGS AND RECOMMENDATION**

Tanya Joiner, proceeding pro se on behalf of her minor child, D.J.,[1] seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for childhood Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  42 U.S.C. § 402 et seq.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

Joiner filed a memorandum in support of her claim.  Record Doc. No. 15. Defendant filed a timely reply memorandum.  Record Doc. No. 16.

----

[1] Pursuant to Fed. R. Civ. P. 5.2(a), parties must refer to minors in pleadings filed in this court only by the minor's initials and must refrain from putting dates of birth and social security numbers in public records.

I.    <u>PROCEDURAL HISTORY</u>

D.J. was seven years old on the date of the hearing before an Administrative Law Judge ("ALJ"). His mother filed an application for SSI on his behalf on April 9, 2009, alleging a disability onset date of March 12, 2009 due to attention deficit hyperactivity disorder. (Tr. 85, 110). After the application was denied, Joiner filed a timely request for a hearing, which was conducted before an ALJ on March 11, 2010. The ALJ issued a decision dated April 30, 2010, finding that D.J. was not disabled. (Tr. 9-21). After the Appeals Council denied plaintiff's request for review on September 21, 2010 (Tr. 1-3), the decision of the ALJ became the final decision of the Commissioner for purposes of this court's review.

II.    <u>STATEMENT OF THE ISSUES ON APPEAL</u>

Joiner, who is proceeding pro se, does not assign any specific legal errors. She argues only that the ALJ "did not take the doctor's decision into consideration." She says that her son was diagnosed with ADHD, but that the medication was not working. She states that he was seen in July 2010 (after the ALJ's decision but before the Appeals Council's denial of review) by a psychiatrist, Dr. Dowling, who "diagnose[d] him as bipolar depress [sic]." Joiner asserts that she reported this diagnosis to the Social Security office, "but they did not send for the paperwork so he was denied again." Record Doc. No. 15 at p. 2. Thus, she appears to argue that the court or the

2

Commissioner should consider new and material evidence consisting of D.J.'s new diagnosis of bipolar disorder and/or depression.

In addition to considering that argument, the court will review the entire record to determine whether substantial evidence supports the ALJ's findings.

III.   <u>ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL</u>

The ALJ made the following findings relevant to the issue on appeal:

A.   D.J. was a seven-year-old child on the date of the application.

B.   He has a severe impairment consisting of attention deficit hyperactivity disorder.

C.   His impairments do not meet or medically equal the criteria for any impairment listed in Appendix 1, Subpart P, Part 404, specifically including Listing 112.11 for attention deficit hyperactivity disorder.

D.   D.J. does not have an impairment or a combination of impairments that functionally equals any of the Listings.

E.   He has no limitations in the domains of interacting and relating with others, moving about and manipulating objects, and health and physical well-being.

F.   D.J. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and caring for himself.

G.    He has not been disabled as defined in the Act since April 9, 2009, the date of the application, through the date of the decision.

(Tr. 12-20).

IV.   <u>ANALYSIS</u>

A.   <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  <u>Id.</u>

4

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To qualify for SSI, a claimant must be "disabled" as defined by the Act.  42 U.S.C. § 423(a)(1)(D).  In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("1996 Act"), which redefined the eligibility standard for children under the SSI disability determination process.  This statute applies to all child disability applicants who filed claims on or after August 22, 1996 or whose cases were not finally adjudicated before that date.  Id. § 211(d)(1)(A)(I).

According to the 1996 Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months." Id. § 1382c(a)(3)(C)(I).

The Commissioner's final regulations in effect at the time of the ALJ's decision provide a three-step procedure for evaluating a child's claim of disability. The first step is to determine whether the claimant is engaging or has engaged in substantial gainful activity. If the answer is "yes," the claimant will be found not disabled. If the answer is "no," the second step requires a determination whether the claimant has a medically determinable severe impairment. If not, the claimant will be found not disabled. If the claimant has such an impairment, the last step is to determine whether the impairment meets or equals in severity, either medically or functionally, an impairment listed in Appendix 1, Subpart P, Part 404 of the Commissioner's regulations ("the Listings"). If the claimant has such an impairment and the impairment meets the duration requirement, the claimant will be found disabled. If not, the claimant will be found not disabled. 20 C.F.R. § 416.924 (2009).

An ALJ must assess functional equivalence in children by examining the child's limitations in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). An impairment or combination of impairments functionally equals

6

a listed impairment if it results in marked limitations in two domains or an extreme limitation in one domain.  Id. § 416.926a(a).

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174; accord Perez v. Barnhart, 415 F.3d 457, 462 (5th Cir. 2005).

B.     Factual Background

Joiner waived her right to representation orally at the hearing and in writing.  (Tr. 28, 84).  She testified that her son, D.J., was seven years old and attended Andrew Wilson Charter School. She stated that he had been kept back and was currently repeating the first grade.  (Tr. 29-30).  She said he has four sisters, ages two, five, eleven and thirteen.  She stated that D.J. had taken Vyvanse[2] for his attention deficit hyperactivity disorder before coming to the hearing that day.

Joiner testified that D.J.'s pediatrician, Dr. Marie Darken, who practices at the Edna Pilsbury Clinic, had prescribed the medication.  (Tr. 30-31).  She stated that D.J.

---

[2]Vyvanse (generic name: lisdexamfetamine) "is a central nervous system stimulant.  It affects chemicals in the brain and nerves that contribute to hyperactivity and impulse control.  Lisdexamfetamine is used to treat attention deficit hyperactivity disorder (ADHD) in adults and in children who are at least 6 years old."  http://www.everydayhealth.com/drugs/vyvanse (visited on September 1, 2011).

7

sees Dr. Darken monthly and that he had started taking Vyvanse in April 2009.[3] (Tr. 31-32).  She said D.J. takes his medication every day, except on weekends when he is at home with her.  She testified that she lets him skip the drug on weekends because it makes his stomach hurt and he does not eat at school when he takes it.  She said Dr. Darken had just increased his dosage from 30 to 40 milligrams because the lower dosage was not working.  Joiner said that Dr. Darken had explained that D.J.'s inability to eat while taking the medication will change.  (Tr. 32).  She stated that Dr. Darken told her it was okay not to give D.J. the medication on weekends.

Plaintiff testified that she had signed up to have D.J. see a psychiatrist at LAS, a program that specializes in children with attention deficit hyperactivity disorder.  She said the school had recommended last year that she get him into a program because of his fighting with other kids and disruptive behavior in the classroom.  She stated that the school "put him out" for two to three months the previous year until she took him to see a psychiatrist.  (Tr. 33-34).  She testified that she took him to a child psychiatrist on Tchoupitoulas Street, who was recommended by Dr. Darken.  She could not remember the psychiatrist's name.  She stated that the psychiatrist told her he could not treat D.J. because Joiner could not pay for treatment.  She explained that the psychiatrist said that

---

[3]Joiner testified that he started taking it in April 2008, but the medical records confirm that it was actually in 2009.

8

Medicaid would pay either for the pediatrician or for him, but not both, so she decided to stay with Dr. Darken.  She testified that she learned about the LAS program from a friend.  She said that D.J. has "LA Chip," which is Medicaid.  (Tr. 34-36).

Joiner testified that she did not know that Children's Hospital had psychiatrists and therefore did not take D.J. there or call there to find out if they had psychiatrists.  (Tr. 36).  She said she did not know that Tulane or LSU hospitals had child psychiatrists.  She stated that none of her other children have ever needed psychiatric treatment.  She said she did not call LA Chip to ask for a psychiatrist who takes Medicaid.  (Tr. 37-38).

Plaintiff testified that she grew up in New Orleans, attended Carver High School and did not go to college.  She said she had not worked since the previous year, when she worked at Rouse's Supermarket as a cashier.  (Tr. 38-39).  She stated that she has a car and she drives.

Joiner testified that D.J. had not been suspended from school in the current school year.  (Tr. 39).  She said he has no hearing problems, but has a little difficulty with his speech and is unable to pronounce some words correctly.  She stated that he also writes words backwards, but has not been diagnosed as dyslexic.  She said he wears glasses only for reading because he is farsighted.  He was not wearing his glasses at the hearing.  She said he did not need glasses for coloring, which he was doing at the hearing.  (Tr. 40).

9

Plaintiff testified that D.J.'s teacher had not said anything to her about his writing backwards. She stated that her son is not passing at school. She said that his teacher (who is a man) told her that D.J. was not on grade level and that the teacher was trying to work with him, but the teacher had done all that he could do. She stated that she is trying to find a school that works one on one with children with behavioral and academic problems, because his current school does not do that. She said D.J. only wants to play and does not want to focus on school work. (Tr. 41).

Joiner testified that her son is not receiving any speech therapy and that she had not requested it for him because he does not need it. (Tr. 41-42). When the ALJ pointed out that a report from New Orleans Speech and Hearing Center recommended that he have speech therapy, she said she was not told that. She said all the reports were sent to Barbara Collins (the DDS examiner) and that she did not receive a copy. She stated that she had not spoken to Collins about the report because Collins did not call her back.

Plaintiff stated that D.J. does his homework and that she helps him with it. She said he does not like sports and does not play on any teams. (Tr. 42). She said he prefers playing games on his Nintendo and the X-box.

Joiner testified that she had not asked Dr. Darken for a second referral to another doctor because she had signed D.J. up for the LAS program. She said a woman from the program had come to meet with her the previous year and was scheduled to meet with

10

her son's teacher the week after the hearing.  She did not know why the woman waited until March of the current school year to meet with D.J.'s teacher.  She said that the program had not been helping with his grades.  (Tr. 43).

Joiner said that D.J. was absent from school a lot the previous year, but that the absences were the result of the school suspending him.  She stated that D.J. hit another student in the head with a stick in May 2009.  Upon questioning by the ALJ, D.J. stated that he made a stick and hit the girl in the head.  (Tr. 44).  When asked why he had hit her, he said that he had a stick.  His mother testified that was why he was suspended a second time.  She said the first suspension occurred when he stabbed another student with a pencil about a week before the stick incident.  She stated that he had excused absences on some of the days he was suspended because of a note from Dr. Darken.  She explained that the school wanted him to stay out of school until he saw a psychiatrist, so Dr. Darken wrote a note for those days.  (Tr. 44-45).

In response to the ALJ's comment that she could not see why Joiner was not getting more help for D.J., plaintiff said that was why she had signed him up with LAS in November of the preceding year.  She said that the woman from LAS came to her house in November to complete the paperwork and came again in March of the current year.  Plaintiff said she did not know what else to do or where to go.  (Tr. 46-47).  She said she applied for SSI because she wants her son to have treatment and to go to a better

school where he can have one-on-one attention and not just take medicine.  She noted that her daughter in kindergarten is already reading better than D.J.  She said she would provide her son's latest report card to the ALJ when it arrives.  (Tr. 48). She stated that her son has been tardy a few times this school year because her children sometimes miss the bus and then she drives them to school.

D.J. stated that he has not played on any sports teams and is not in the Boy Scouts. He did not know what he wants to be when he grows up.  He said he was not wearing his glasses because he does not need them.  (Tr. 49).  He stated that he can bathe and dress himself.  (Tr. 49-50).  He said his favorite color was red and Reggie Bush was his favorite Saints player.

Joiner testified that D.J. is currently taking his attention deficit hyperactivity disorder medication and that she has seen improvement since he has been on it.  She said he has not been in a tutoring class because his school does not have one.  (Tr. 50).  She said she had just enrolled him in a summer school program at the YMCA.

Plaintiff delivered a letter to the ALJ from D.J.'s teacher, which the ALJ read into the record.  The letter stated that D.J. was off task and disrupting the class 90 percent of the time; he banged his chair on his desk and rolled around on the floor; he was receiving intervention services in reading and individualized math, but he could do so much better if he was seeing a child psychiatrist who could help him.  Joiner said that D.J.'s  teacher

had told her about the events described in the letter.  She said she had asked the school to refer her to someone, but they did not know anyone.  She stated that D.J. hates criticism.  (Tr. 52-53).

C.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 13-15).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

D.      Plaintiff's Appeal

At the third step of the analysis, the ALJ held that D.J.'s severe impairment of attention deficit hyperactivity disorder does not functionally equal the criteria of any Listing.  As she was required to do, the ALJ made findings concerning D.J.'s limitations in each of the six function domains and concluded that he has no limitations in three (interacting and relating with others, moving about and manipulating objects, and health and physical well-being) and less than marked limitations in the other three (acquiring and using information, attending and completing tasks, and caring for himself).  An impairment or combination of impairments functionally equals a listed impairment only if it results in marked limitations in two domains or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).  Because the ALJ found that D.J. had less than marked

13

limitations in all domains, he did not meet the criteria for functional equivalence.  The ALJ therefore held that he was not disabled for purposes of the Act.

The only medical evidence that plaintiff cites in support of her appeal are D.J.'s diagnosis of attention deficit hyperactivity disorder and an alleged diagnosis of bipolar disorder and/or depression that was allegedly made by a psychiatrist two to three months after the ALJ's decision.  The later diagnosis raises two issues:  whether the Appeals Council should have considered it and whether this court may consider it.

1.    The Appeals Council did not err by failing to consider evidence that plaintiff did not provide to it.

As to the alleged diagnosis of bipolar disorder and/or depression in July 2010, Joiner argues that the Commissioner erred because he "did not take the doctor's decision into consideration."  Joiner states in her memorandum that she reported D.J.'s diagnosis of bipolar disorder and/or depression to the Social Security office, "but they did not send for the paperwork so he was denied again."  Record Doc. No. 15 at p. 2.

Plaintiff bears the burden of proving that a minor claimant for SSI is disabled. E.R.H. v. Comm'r of Soc. Sec. Admin., 384 F. App'x 573, 575 (9th Cir. 2010), cert. denied, 131 S. Ct. 1506 (2011) (citing 20 C.F.R. §§ 404.1512(a), (c)); Lowery v. Comm'r, Soc. Sec. Admin., 55 F. App'x 333, 341 & n.10 (6th Cir. 2003); Taylor ex rel. T.S.T. v. Astrue, No. 10-00214, 2011 WL 941289, at *2 (E.D. La. Feb. 28, 2011), report

14

& recommendation adopted, 2011 WL 976683 (E.D. La. Mar. 15, 2011) (citing 20 C.F.R.

§ 416.924; Fraga v. Bowen, 810 F.2d 1296, 1301 (5th Cir. 1987); Verrett v. Comm'r of

Soc. Sec., No. 99-3647, 2001 WL 179922 at *1 n.7 (E.D. La. Feb.20, 2001)); Salmela

v. Astrue, No. 09-2309, 2011 WL 821088, at *2 (D. Minn. Feb. 11, 2011), report &

recommendation adopted, 2011 WL 809456 (D. Minn. Mar. 1, 2011); Inge ex rel. D.J.I.

v. Astrue, No. 7:09-CV-95-O, 2010 WL 2473835, at *2 (N.D. Tex. May 13, 2010), report

& recommendation adopted, 2010 WL 2473598 (N.D. Tex. June 16, 2010) (citing 42

U.S.C. § 1382c(a)(3)(C)(i)).

  An ALJ must fully and fairly develop the facts relative to a claim for disability

benefits.  Reynaud v. Astrue, 226 F. App'x 401, 402 (5th Cir. 2007) (citing Ripley v.

Chater, 67 F.3d 552, 557 (5th Cir. 1995)).  When the plaintiff is proceeding pro se, the

ALJ has a heightened duty to develop the facts fully and fairly.  Castillo v. Barnhart, 325

F.3d 550, 552-53 (5th Cir. 2003).

  Nonetheless, Joiner always bore the burden of proving her son's disability with

sufficient medical evidence.  Brown v. Astrue, 344 F. App'x 16, 19 (5th Cir. 2009)

(citing Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Reynaud, 226 F. App'x at

403.  If she was unable to provide sufficient medical evidence, the ALJ may make a

decision based on the information available.  Id.

Thus, it was plaintiff's responsibility to provide the Commissioner with any new medical evidence that she wanted the Appeals Council to consider.  She states in her memorandum that she informed the Social Security office that her son had a new diagnosis, which was made in July 2010, but she admittedly did not provide the Commissioner with copies of any medical evidence regarding that diagnosis.  The Appeals Council did not deny plaintiff's request for review until September 21, 2010.  Thus, Joiner had sufficient time before that decision in which to enter the new medical evidence into the record.  Castillo, 325 F.3d at 553.  It was not legal error for the Appeals Council not to "take the doctor's decision into consideration" when plaintiff did not provide any supporting medical evidence to the Appeals Council.

### 2.      Plaintiff's new evidence does not warrant a remand

Joiner did not provide the court with a copy of any medical records regarding the alleged diagnosis of bipolar disorder and/or depression.  Even if she had, however, it is well established that this court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate.  Martinez v. Astrue, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)); Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

16

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence which is merely cumulative of that already in the administrative record is <u>not</u> 'new' evidence that would support a remand under § 405(g)."  <u>Wilson v. Astrue</u>, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing <u>Pierre v. Sullivan</u>, 884 F.2d 799, 803 (5th Cir. 1989); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); <u>accord</u> <u>Perkins v. Shalala</u>, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); <u>Martin v. Barnhart</u>, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004) (Vance, J.) (citing <u>Pierre</u>, 884 F.2d at 803).

New evidence must be material to be the basis for a remand.  The "materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied." <u>Castillo v. Barnhart</u>, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing <u>Ripley</u>, 67 F.3d at 555); <u>accord</u> <u>Joubert</u>, 287 F. App'x at 383.  This requirement means that the new evidence cannot merely concern a subsequently acquired

disability or the deterioration of a condition that was not previously disabling.  <u>Id.</u>; <u>Garson</u>, 162 F. App'x at 303.

In addition, "'[f]or new evidence to be material, there must exist the "<u>reasonable possibility</u> that it would have changed the outcome of the Secretary's determination."'" <u>Hunter v. Astrue</u>, 283 Fed. Appx. 261, 2008 WL 2510776, at *1 (5th Cir. 2008) (quoting <u>Latham v. Shalala</u>, 36 F.3d 482, 483 (5th Cir. 1994) (quoting <u>Chaney v. Schweiker</u>, 659 F.2d 676, 679 (5th Cir. 1981))) (emphasis added); <u>accord</u> <u>Jones v. Astrue</u>, 228 Fed. Appx. 403, 2007 WL 1017095, at *3 (5th Cir. 2008) (citing 28 U.S.C. § 405(g)); <u>Brumbelow v. Apfel</u>, No. 3:00-CV-0803-L, 2001 WL 1543852, at *1 n.3 (N.D. Tex. Nov. 30, 2001) (citing <u>Latham</u>, 36 F.3d at 483; <u>Johnson v. Heckler</u>, 767 F.2d 180, 183 (5th Cir. 1985); <u>Chaney</u>, 659 F.2d at 679).

In the instant case, medical evidence from July 2010, only two to three months after the ALJ's decision, may very well relate to the applicable time period.  However, there is nothing in plaintiff's memorandum to show any reasonable possibility that a diagnosis of bipolar disorder and/or depression would have changed the outcome of the Commissioner's determination.  The "mere diagnosis of a mental impairment (such as depression) does not establish a claimant's disability claims." <u>Martin v. Chater</u>, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing <u>Anderson v. Sullivan</u>, 925 F.2d 220, 222 (7th Cir. 1991)); <u>accord</u> <u>Harris v. Barnhart</u>, No. 02-55540, 2003 WL

21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).  Plaintiff must show that D.J. "was so functionally impaired by" his newly diagnosed impairment that he was disabled within the meaning of the Act during the relevant time period, from the alleged onset date through the date of the ALJ's decision. Id. (emphasis added); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992).

To show that D.J. was disabled within the meaning of the Act by his newly diagnosed disorder in combination with his previously diagnosed attention deficit hyperactivity disorder, Joiner must establish that his condition results in marked limitations in two domains or an extreme limitation in one domain.  She has presented no evidence to carry this burden.  In the absence of any reasonable possibility that the new diagnosis of bipolar disorder and/or depression would have changed the outcome of the Commissioner's determination, the court cannot remand this matter for consideration of new evidence.

Furthermore, plaintiff has failed to show good cause for her failure to incorporate the new evidence into the record.  She states that D.J. saw the psychiatrist, Dr. Dowling, in July 2010 and that she advised the Social Security office of his diagnosis.  However, she admits that she did not provide Dr. Dowling's medical records to the Commissioner,

although she had sufficient time to do so before the Appeals Council denied her request for review on September 21, 2010.

Therefore, a remand to consider new evidence is not warranted.

### 3.   Substantial evidence supports the ALJ's findings

Construing her memorandum liberally, Joiner may be arguing that the ALJ failed to accord sufficient weight to D.J.'s diagnosis of attention deficit hyperactivity disorder and to the evidence of his problems at school. The ALJ found that D.J.'s attention deficit hyperactivity disorder was a severe impairment, but concluded that D.J. did not demonstrate the marked or extreme functional deficits necessary to be found disabled. Substantial evidence supports the ALJ's conclusion that D.J. does not functionally equal any Listing.

The ALJ accurately summarized the medical records, including the opinions of a consultative examiner, psychologist Scuddy Fontenelle, III, Ph.D., who examined D.J. on August 8, 2009. (Tr. 190-92). The ALJ gave controlling weight to Dr. Darken's opinions regarding D.J.'s diagnosis and treatment and afforded great weight to the opinions of Dr. Fontenelle and the consultative speech and language pathologists and audiologists at the New Orleans Speech and Hearing Center, all of which the ALJ found to be well supported and consistent with the evidence of record.

None of these opinions are contradicted by any other medical evidence.  The uncontradicted and well supported opinions of plaintiff's treating pediatrician and the consultative examiners are substantial evidence upon which the ALJ relied and gave the appropriate weight to find that D.J. has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and caring for himself, and no limitations in the domains of interacting and relating with others, moving about and manipulating objects and health and physical well-being. Newton v. Apfel, 209 F.3d 448, 455-56 (5th Cir. 2000).

Furthermore, the medical and educational records, as well as Joiner's testimony, show that D.J.'s condition improved when he was compliant with his prescribed medications.  A medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  Bolton v. Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La. Feb. 7, 2002) (Vance, J.).

Thus, the record as a whole provides substantial support for the ALJ's findings that plaintiff had less than marked limitations in any domain of functioning and therefore did not functionally equal any Listing.

## RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____6th_____ day of September, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE